**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| **TALLULAH FRAZIER, SHELBY GERAGHTY, LUCY SCHOENLEIN, and ANNA WILLIAMS, Individually and on behalf of all others similarly situated,** | § | |
| **Plaintiffs,** | § | **CASE NO. 4:26-cv-219** |
| **v.** | § | |
| **HANOVER COLLEGE,** | § | |
| **Defendant.** | § | |

## CLASS ACTION COMPLAINT

Plaintiffs TALLULAH FRAZIER, SHELBY GERAGHTY, LUCY SCHOENLEIN and ANNA WILLIAMS ("Plaintiffs"), female student-athletes at Hanover College ("Defendant" or "Hanover"), bring this class action lawsuit against Hanover for discriminating against its female student-athletes and potential student-athletes on the basis of their sex in violation of Title IX of the Education Amendments of 1972 ("Title IX") by depriving them of equal opportunities to participate in varsity intercollegiate athletics, including by eliminating the varsity women's swimming team. Plaintiffs and Class Members seek a declaratory judgment, preliminary injunctive relief, permanent injunctive relief, costs, and attorneys' fees. Plaintiffs and Class Members allege as follows:

## INTRODUCTION

1. This action arises from Hanover's announcement on March 20, 2026, that it was eliminating its women's varsity swimming team (along with its men's swimming team), when the school was already depriving its female student-athletes of an extraordinary number of

opportunities to participate in varsity athletics—and had been doing so for decades. According to the most recent publicly available information that Hanover reported and verified as accurate to the U.S. Department of Education, in the 2024-2025 academic year, the school would have had to add 170 opportunities for females to its varsity intercollegiate athletic program for women to receive equal opportunities to participate.

2. Instead of adding opportunities for women to participate, Hanover decided to eliminate them.

3. Plaintiffs are student-athletes who were on the women's swimming team at Hanover.[1] Hanover is an NCAA Division III institution and a member of the Heartland Collegiate Athletic Conference (HCAC).

4. Hanover's announcement that it was eliminating the women's swimming team was devastating to Plaintiffs and their team members. They were left scrambling to figure out what to do next, both as students working towards academic degrees and as athletes who trained most of their lives to compete at the varsity collegiate level.

5. Hanover's abrupt elimination of the women's team caused—and is causing—irreparable injury to Plaintiffs and other athletes.

6. Hanover's elimination of the women's swimming team also continues, expands, and creates new victims of its history of sex discrimination in in its varsity intercollegiate athletic program in violation of Title IX.

7. Throughout its history, Hanover has failed to provide equal intercollegiate athletic participation opportunities to its female students. According to the most recent publicly available

[1] Hanover's women's swimming team did not include divers or a diving coach because the pool used by the team was too shallow for a diving board.

information, in the 2024–2025 academic year, women were 50.34% of Hanover's undergraduates but were given only 34.86% of the opportunities to participate in varsity athletics.

8. Based on this data, the female athlete participation gap at Hanover was 15.48% before the school announced that it was eliminating the women's swimming team. Hanover needed to *add* women's teams to achieve gender equity and comply with Title IX, but, instead, it announced it was *eliminating* a women's team. If it is allowed to do so, the female athletic participation rate will further decrease, the gap between the female undergraduate enrollment and athletic participation rates will increase, and Hanover will have to add approximately 177 intercollegiate athletic varsity opportunities for women to comply with Title IX.

9. Hanover's actions constitute intentional, prohibited discrimination based on sex in violation of Title IX and its implementing regulation at 34 C.F.R. Part 106, which applies to all colleges and universities—like Hanover—that receive federal funding

10. Title IX requires educational institutions receiving federal funds to provide women and men with (a) equal opportunities to participate in athletics, (b) equal athletic financial aid, and (c) equal treatment in their intercollegiate athletic programs. Hanover receives substantial federal funding but fails to provide the required equality to women.

11. Specifically, Hanover deprives women of equal opportunities to participate by failing to satisfy *any* part of the three-part test for measuring compliance with Title IX:

a. Hanover fails to provide female student-athletes with athletic opportunities at a rate that is "substantially proportionate" to their undergraduate full-time enrollment rate;

b. Hanover fails to demonstrate a "history and continuing practice of program expansion responsive to the developing interests and abilities" of the sex that has been historically "underrepresented" (i.e., women); and

c. Hanover fails to show that "the interests and abilities" of the historically underrepresented sex have been "fully and effectively accommodated."

*See* Office of Civil Rights ("OCR"), A Policy Interpretation, Title IX and Collegiate Athletics, 44 Fed. Reg. 71,418 (1979) "OCR Policy Interpretation") at § VII.C.5.a. ; see also OCR, U.S. Dep't of Educ., Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test (Jan. 16, 1996).

12. Prior to filing this lawsuit, Plaintiffs, through their counsel, sent Hanover a letter and then met with Hanover's counsel, explaining why the elimination of the women's swimming team would violate Title IX. Plaintiffs asked the school to agree to continue the team and develop a plan to comply with Title IX. Hanover refused to do so, requiring Plaintiffs to file this case.

13. Through this lawsuit, Plaintiffs seek to block Hanover's latest effort to discriminate against women in its intercollegiate athletic program and require the school to comply with federal law.

14. Specifically, Plaintiffs seek to prohibit Hanover from eliminating its women's varsity swimming team—and all other women's varsity athletics teams—unless and until Hanover is and will be providing women with equal opportunities to participate in varsity intercollegiate athletics in compliance with Title IX.

**JURISDICTION AND VENUE**

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, 1343(a)(3), and 1343(a)(4) because this action arises under federal law, including Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681 et seq., and the regulations and policies promulgated pursuant to that law.

16. This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202 and its equitable powers.

17. Venue is proper in this District under 28 U.S.C. § 1391 because Hanover College resides in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendant operates the athletic program at issue in this District.

18. Defendant receives federal financial assistance within the meaning of Title IX, including but not limited to Pell Grants, and other federal funding, making the cause of action proper.

## PARTIES

### Plaintiff Tallulah Frazier

19. Plaintiff Tallulah Frazier is over 18 years old and is entering her sophomore year at Hanover. She is majoring in Biology with a minor in Business. She expects to graduate in 2029.

20. Plaintiff Frazier was a member of the women's swimming team at Hanover and has three years of athletic eligibility left.

21. Plaintiff Frazier grew up in Tennessee and started swimming when she was four years old. She started coaching swimming when she was eleven years old.

22. Plaintiff Frazier enrolled at Hanover College specifically because of its women's swimming team.

23. On the team, Plaintiff Frazier demonstrated substantial improvement and was given an award for being the most improved team member.

24. Plaintiff Frazier considered transferring but has not made any plans to do.

25. Plaintiff Frazier has been significantly impacted by the elimination of the women's swimming team. It provided her with purpose, structure, and balance. Without the team, she is losing part of her identity for which she has worked so hard.

26. Plaintiff Frazier is being deprived of an important chapter of her life as a college athlete, which she expected to last four years. She lost the opportunity to continue learning valuable skills as a member of Hanover's women's swim team, such as discipline and confidence. Plaintiff Frazier is not only losing what she expected to gain, but also her support system and emotional outlet.

27. Plaintiff Frazier will be unable to train, practice, compete, or receive coaching at the varsity level unless the Hanover women's swimming team continues. Hanover's decision to cut the team harmed Plaintiff Frazier's ability to continue training and maintain the physical conditioning necessary for her sport.

28. Plaintiff Frazier's journey with swimming was not easy. She has battled knee issues, for which she has undergone surgery. While it would have been easier to take the path of least resistance and give up swimming when she was battling her injuries, Plaintiff Frazier continued to swim out of her love for the sport. She remains passionate about continuing to swim.

29. When Plaintiff Frazier committed to Hanover, she envisioned swimming there for all four years of her college career and would eagerly continue swimming at Hanover if the team is preserved.

**Plaintiff Shelby Geraghty**

30. Plaintiff Shelby Geraghty is over 18 years old and is entering her sophomore year at Hanover. She is majoring in Psychology and Spanish and minoring in Social Justice. She expects to graduate in 2029.

31. Plaintiff Geraghty was a member of the women's swimming team at Hanover and has three years of athletic eligibility left.

32. Plaintiff Geraghty grew up in Louisville, Kentucky, and has been swimming for nearly fourteen years. Swimming has been a huge part of her life and has become her safe space.

33. Plaintiff Geraghty liked the atmosphere at Hanover when she toured campus, but the factor that set the school apart for her was the women's swimming team. The team was smaller than those at other schools she considered and she was excited to build a close bond with her teammates.

34. While on the Hanover women's swimming team, Plaintiff Geraghty podiumed at the 2026 HCAC meet in the 1650 free (mile swim), placing 6th; she has also made the podium in team relay events; and she improved her personal best time in the 1650 free swim for the first time in years.

35. Due to the lack of notice before Hanover announced the elimination of its women's swimming team, Plaintiff Geraghty was unable to transfer because she lacked the time necessary to apply for needed scholarships.

36. Hanover's elimination of the women's swimming team is causing serious, irreparable injury to Plaintiff Geraghty. She is losing part of her hard-earned identity as a college student-athlete. Swimming has provided Plaintiff Geraghty with friendships, special opportunities to travel, and job prospects.

37. When Plaintiff Geraghty chose Hanover, she expected to have a four-year swim career with the team. Hanover's elimination of the team is stripping Plaintiff Geraghty of the camaraderie and close bonds that she established with her teammates. The swimming team has

played an important role in Plaintiff Geraghty's college career, helping her improve her mental health, build friendships, and gain general life lessons.

38. Plaintiff Geraghty fears the discontinuation of the swimming team will affect her well-being. Without swimming as her outlet, everyday life will be more difficult. The swimming team gave Plaintiff Geraghty the structure of a set time to focus on swimming and help alleviate her other stressors as a student-athlete.

39. Ending Plaintiff Geraghty's college swim career early also means ending the valuable lessons that being part of Hanover's varsity team has provided, such as how to persevere through challenges and how to communicate with team members even through adversity.

40. Plaintiff Geraghty will be unable to train, practice, compete, or receive coaching at the varsity level unless the Hanover women's swimming team continues. Plaintiff Geraghty had plans to work towards breaking school records and take more time to improve as an athlete. Hanover's decision to cut the team harmed Plaintiff Geraghty's ability to continue important training and maintain the physical conditioning necessary for her sport.

**Plaintiff Lucy Schoenlein**

41. Plaintiff Lucy Schoenlein is over 18 years old and is entering her senior year at Hanover. She is majoring in Kinesiology and Integrative Physiology and minoring in Chemistry. She expects to graduate in 2027.

42. Plaintiff Schoenlein was a member of the women's swimming team at Hanover and has one year of athletic eligibility left.

43. Plaintiff Schoenlein could not transfer to another college after the announced elimination of the swimming team because doing so would have added an additional year of school to earn her undergraduate degree.

44. Plaintiff Schoenlein grew up in Indianapolis, Indiana, and has been swimming for as long as she can remember. Swimming has been a reliable constant in her life, providing her with support and comfort to get through hardship. Swimming taught Plaintiff Schoenlein about resilience and provided new friendships with people she now considers family.

45. In the future, Plaintiff Schoenlein hopes to remain involved in swimming, continue teaching swimming lessons, and coach a team of her own someday.

46. Plaintiff Schoenlein chose Hanover because it provided an opportunity for her to continue competing in the sport she loves. While Plaintiff Schoenlein was also attracted to the school's academics, she would not have chosen Hanover if she could not participate on the swimming team.

47. Plaintiff Schoenlein is a decorated swimmer. She received the Freshman of the Year award, the Panther Pride Award and the Extra Mile award. She has been awarded All-HCAC Academic Team, achieved conference podium finishes, and has made the finals in her event in each HCAC championship.

48. The announcement of Hanover's decision to eliminate the women's swimming team has caused and is causing serious, irreparable injury to Plaintiff Schoenlein. She is losing part of her hard-earned identity as a college student-athlete, for which she has worked most of her life.

49. Plaintiff Schoenlein has given her time, energy and dedication to the sport she loves, only to have it taken away during her final year of college. The hastiness of the elimination announcement has been hurtful because, when Plaintiff Schoenlein chose Hanover, she expected to have a four-year swim career with the team. Instead, she is being forced to stop swimming in her final season.

50. Hanover's elimination of the team is also stripping Plaintiff Schoenlein of the camaraderie and close bonds she has established with her teammates.

51. Plaintiff Schoenlein will be unable to train, practice, compete, or receive coaching at the varsity level unless the Hanover women's swimming team continues. Hanover's decision to cut the team harmed Plaintiff Schoenlein's ability to continue important training and maintain the physical conditioning necessary for her sport.

**Plaintiff Anna Williams**

52. Plaintiff Anna Williams is over 18 years old and is entering her junior year at Hanover. She is majoring in Political Science and minoring in Spanish & Computer Science. She expects to graduate in 2028.

53. Plaintiff Williams was a member of the women's swimming team at Hanover and has two years of athletic eligibility left. She is unable to transfer schools because of her commitment to the Political Science Department.

54. Plaintiff Williams grew up in Fishers, Indiana. For Plaintiff Williams, swimming provides a schedule, goals, and a release from stress.

55. Plaintiff Williams chose Hanover for the school's environment and the opportunity to swim at the collegiate level.

56. While on the Hanover women's swimming team, Plaintiff Williams has demonstrated continued improvement at conferences and has earned two awards: the Freshman of the Year Award & the All-HCAC Academic Team award.

57. The announcement of Hanover's decision to eliminate the women's swimming team is causing serious, irreparable injury to Plaintiff Williams. She is losing part of her hard-

earned identity as a college student-athlete and has been hurt by the hastiness of the elimination announcement.

58. Plaintiff Williams will be unable to train, practice, compete, or receive coaching at the varsity level unless the Hanover women's swimming team continues. Hanover's decision to cut the team harmed Plaintiff Williams's ability to continue important training and maintain the physical conditioning necessary for her sport.

## Defendant Hanover College

59. Defendant Hanover College is a private college and is recognized as a national liberal arts college. Hanover College is a domestic nonprofit corporation doing business in the State of Indiana.

60. Defendant is a recipient of federal funds and is required to comply with Title IX.

## FACTUAL ALLEGATIONS

### The Women's Swimming Team

61. Hanover College is a private liberal arts college located in Hanover, Indiana, that had an enrollment of 1,021 undergraduates during the 2024–2025 academic year. Hanover is a member of the National Collegiate Athletic Association (NCAA) in Division III and the Heartland Collegiate Athletic Conference. Like other Division III schools, Hanover does not offer athletic financial aid.

62. Hanover established an intramural swim team in 1967 that lasted approximately ten years and supported an intercollegiate club program from 1969 to 1977.

63. In spring 2017, Hanover announced it would launch a varsity intercollegiate athletic swimming program for men and women, with competition beginning during the 2018–2019 academic year. The teams were led by head coach Blake Braden, who was the assistant coach of

the Milliken University men's and women's swimming teams for the four years prior to arriving at Hanover. He spent his first year as Hanover's swimming head coach recruiting athletes.

64. Lynn Hall, who served as Hanover's Athletics Director from 1999 to 2025, oversaw the swimming program addition. Hanover President Lake Lambert cited enrollment as a driving factor for the program expansion: "The main reason for this addition is the prospect of enrollment growth with limited expenses. The impact it could make on student recruitment and our long-term financial health is positive. Indiana has many high-school swimmers, and we are convinced this is a great opportunity."[2]

65. Hanover's announcement of the addition said, "Through a cooperative agreement with Southwestern High School, the Panthers will use the high school's pool for practices and competition. The off-site facility, just five minutes from campus, features a six-lane pool with starting platforms and bleacher seating for fans." *Id.*

66. The program consisted of only swimming teams, without diving, because the Southwestern High School pool ("Southwestern pool") lacked the depth required for a diving board. Although several prospective student-athletes expressed interest in diving, the program was unable to accept them because there was no facility available for them to practice.

67. From its start through 2020, the team practiced and competed at the Southwestern pool without significant disruption.

68. During the 2018–2019 season, the women's swimming team was fourth overall in the HCAC and five swimmers recorded new personal best times.

[2] https://www.madisoncourier.com/sports/hanover-to-bring-back-swimming-program-in-2018-19/article_ea94f53d-e2c5-503d-af5b-8722950b0eb5.html. Site last visited August 1, 2026.

69. In the 2019–2020 season, the women's team finished fourth overall in the HCAC with All-Conference honors.

70. During the 2021–2022 season, the Southwestern pool experienced problems with its air filtration system, forcing the Hanover swimming teams to relocate practices to the Switzerland County YMCA, a forty-minute drive from campus.

71. The teams practiced at the YMCA during that season, held no home meets, and could only secure practice time between 5:00 and 5:30 a.m., causing roster numbers to decline.

72. Then head coach Blake Braden abruptly resigned in the middle of the season, leaving the teams without a head coach for the second half of the 2021-2022 season.

73. For the 2022-2023 season, Hanover did not hire a full-time head coach with varsity experience to replace Blake Braden. Instead, after the season started, it hired Jay Crawford ("Coach Crawford"), one of two head coaches of the Southwestern High School swimming team, to serve as an interim, part-time head coach at Hanover while he continued coaching at Southwestern.

74. After Coach Crawford started serving as the interim, part-time head coach, Hanover did not search for any other coach, full-time or part-time. It hired Coach Crawford as the official (not interim) part-time head coach in January 2023. Coach Crawford coached Hanover's men's and women's swimming teams from then until the school eliminated them in 2026. Throughout his tenure, Coach Crawford was employed on a part-time basis, with no assistant coach or graduate assistant to help him.

75. All other varsity teams at Hanover had a full-time head coach, as well as at least one or more assistant coach(es) and/or a graduate assistant(s) to support the team.

76. The teams began the 2022–2023 season with only three swimmers already on campus, two women and one man. Through recruiting efforts, by the end of the season, there were four student-athletes on the women's team and six student-athletes on the men's team.

77. From September 2023 until after winter break on January 1, 2024, the team was again displaced from its home pool, after the pump failed at the Southwestern pool. The team traveled approximately twenty-five minutes each way to practice at New Washington High School. The team returned to the Southwestern pool for the final third of the 2023–2024 season. One meet during that season was held at New Washington High School.

78. The 2023–2024 teams consisted of thirteen swimmers total, five women and eight men, comparable in size to the prior year, reflecting the goal of retaining student-athletes despite the ongoing facility instability.

79. At the conclusion of the 2023–2024 season, the Southwestern pool shut down for renovations, displacing the teams for the entirety of the 2024–2025 season.

80. During the 2024–2025 season, the teams were required to drive fifteen to twenty minutes to Madison High School for practices held from 5:00 to 7:30 a.m. The student-athletes carpooled or drove separately from their homes to get to practice, as opposed to traveling in a school-provided van, as they had done in seasons past.

81. Despite the continued displacement, the 2024–2025 roster maintained twelve swimmers—six women and six men.

82. For the 2025–2026 season, the teams returned to the renovated Southwestern pool, and Coach Crawford remained a part-time head coach without an assistant.

83. During the 2025–2026 season, the team consisted of thirteen swimmers total, including eight women and five men.

84. During the 2025–2026 HCAC Championship Meet, the swimmers on both the men's and women's teams achieved fifteen personal records, fourteen season personal records, and eleven first through seventh place podium finishes. At the meet, the women's team achieved the most team wins since 2020. If the swimming teams had been given opportunities and resources equal to those provided to other Hanover athletic teams and/or HCAC swimming teams, they would have likely achieved more success.

85. Despite the challenges Coach Crawford faced as the swimming team's head coach, the program was about to have the largest incoming recruited women's team since 2020. Coach Crawford was on track to have a twenty-four-person roster in the swimming program by 2027. Despite this, Hanover decided to dismiss Coach Crawford's progress and eliminate the team.

86. By 2025-2026, Hanover had (a) a fully renovated, stable pool facility to use for decades; (b) Coach Crawford recruiting avidly, still working part-time, but asking to be elevated to a full-time head coach; and (c) rising participation numbers on the women's swimming team.

87. Coach Crawford maintained periodic communication with both the previous and current athletics directors at Hanover about the swimming program's progress and success, his desire for a full-time head coaching position when the time was appropriate, his commitment to growing the program, and his need for an assistant coach. During his tenure as interim or head coach, Coach Crawford did not receive any negative annual job performance reviews.

88. Coach Crawford was never informed by anyone at Hanover that he had to reach specific roster numbers or raise a certain amount of funds, or the men's or women's teams would be cut. No one at Hanover ever urged or worked with him to create a plan to recruit or develop larger teams, discussed with him what he or Hanover could do to achieve these goals, or mentioned to him the possibility the women's or men's teams would be eliminated.

89. For the 2026–2027 academic year, Coach Crawford had secured commitments from seven incoming women's swimming team student-athletes. With seven returning women swimmers, the women's roster was projected to be at fourteen athletes. The women's team's success had also obtained commitments from four prospective women's student-athletes for the 2027–2028 season.

90. Neither Hanover's Vice President for Athletics ("VPA") Mark Shook, who began working at the school on May 1, 2025, or anyone else in Hanover's administration asked Coach Crawford what he expected the 2026-2027 team sizes to be.

91. In March 2026, when Coach Crawford went to meet with VPA Shook, given his success in holding together and building the swimming teams through all of the difficulties it had encountered—and the new opportunities and resources available to it—he was anticipating finally being given the opportunity to hire an assistant coach. That, however, is not what happened.

**Hanover's Elimination of the Women's Swimming Team**

92. On March 20, 2026, Hanover announced that it was eliminating its women's and men's swimming teams. Hanover VPA Mark Shook first informed Coach Crawford of the cancellation and then notified the women's and men's swimming team members, including Plaintiffs.

93. Coach Crawford, Plaintiffs, and the other members of the swimming teams had no advance indication the decision to eliminate the program was coming.

94. Plaintiffs and many of their teammates had enrolled at Hanover primarily because of the opportunity to competitively swim at Hanover and were looking forward to continuing their success in the upcoming 2026-2027 season.

95. To transfer schools, Division III athletes must submit a form to their college athletic department, after which they have thirty days to contact other schools to inquire about a transfer and availability on other teams. Given the timing of the announcement, Plaintiffs and their teammates were unable to make transfer decisions as most teams at other schools had already set their full rosters for the next season.

96. Hanover's delay in announcing its decision to terminate the swimming teams deprived many of the Plaintiffs not only of the opportunity to participate in their sports at Hanover, but also of any significant opportunity to transfer to other schools.

97. By concealing its plans, Hanover denied Plaintiffs any opportunity to plan for, protect themselves against, or mitigate the sudden and devastating impact of the women's swimming team cancellation on Plaintiffs' lives, sports careers, and futures.

98. By eliminating the swimming teams, Hanover severely impacted the student-athletes on the teams, Coach Crawford, and their relationship with the Southwestern pool facility. On March 23, 2026, Hanover terminated its lease with Southwestern High School for use of the pool. The termination stripped the Plaintiffs and their teammates of pool access, leaving them able to swim only during limited, public open-swim hours.

99. Prior to March 20, 2026, Hanover never communicated to Coach Crawford, Plaintiffs, or their teammates that it might cut the women's swimming team or that the team needed to meet financial benchmarks through fundraising or otherwise to survive. On February 19, 2026, during Hanover's Athletics Day of Giving, just a few weeks before the teams' elimination was announced, the swim teams set a goal of $2,000 and Plaintiffs and the other swimming team members raised more than $3,700. Hanover kept those funds.

100. Hanover cited "the lack of an on-campus aquatic facility, projected increases in operating costs, and sustained challenges with roster size" as its reasons for the teams' elimination. https://athletics.hanover.edu/news/2026/3/20/mens-swimming-and-diving-hanover-college-to-discontinue-its-swimming-program.aspx Hanover had, however, never had an on-campus aquatic facility, its past facility issues had been resolved, the school did not explain the basis for its projected increases in operating costs, was and/or should have been aware that increases in operating costs cannot justify violations of Title IX, never developed or implemented any plan to address any challenges with roster size, and, despite that fact, the women's team's roster size was growing significantly.

101. In addition, while Hanover claimed there were "projected increases in operating costs," Jill Mires, the then-superintendent of Southwestern Jefferson County School Corporation, confirmed there was no plan to increase the lease price for Hanover's use of the pool.

102. Plaintiffs, their teammates, and their parents tried to work with Hanover to find a way to preserve the swimming teams but were met by a lack of communication from VPA Shook and an array of answers from President Lake Lambert.

103. Plaintiffs chose to attend Hanover over other opportunities in part because of its women's swimming team. Many of the student-athletes on the swimming teams trained their entire lives to participate in swimming at the collegiate level.

104. Hanover's decision to eliminate the women's swimming team was surprising and devastating to Plaintiffs and their teammates. It was also a clear violation of federal law.

**Title IX Bars Hanover from Discriminating Against its Female Athletes**

105. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

106. Applying Title IX to intercollegiate athletics, the Department of Education ("DOE") has adopted regulations requiring educational institutions receiving federal funds to "provide equal athletic opportunity for members of both sexes." 34 C.F.R. § 106.41(c). These regulations are interpreted and enforced by DOE's Office for Civil Rights ("OCR").

107. In 1979, OCR issued a policy interpretation of Title IX and the regulations as applied to intercollegiate athletics at 44 Fed. Reg. at 71418 (the "OCR Policy Interpretation").

108. The OCR Policy Interpretation sets forth three areas of compliance under Title IX as it relates to college sports: (1) effective accommodation of student interests and abilities; (2) equal athletic financial assistance; and (3) equal treatment and benefits for athletic teams.

109. The OCR Policy Interpretation established three different ways (the "three-part test") to measure whether Hanover effectively accommodates female athletes' interests and abilities—commonly referred to as providing equal athletic participation opportunities.

110. Hanover must meet at least one of the prongs in the three-part test to comply with Title IX:

> (1) Whether intercollegiate level participation opportunities for male and female students are provided in numbers substantially proportionate to their respective enrollments; or
>
> (2) Where the members of one sex have been and are underrepresented among intercollegiate athletes, whether the institution can show a history and continuing practice of program expansion which is demonstrably responsive to the developing interest and abilities of the members of that sex; or

(3) Where the members of one sex are underrepresented among intercollegiate athletes, and the institution cannot show a continuing practice of program expansion such as that cited above, whether it can be demonstrated that the interests and abilities of the members of that sex have been fully and effectively accommodated by the present program.

44 Fed. Reg. at 71,418 (1979).

111. Every federal court of appeals that has considered the three-part test's validity—including the Seventh Circuit—has upheld it. *See, e.g., Kelley v. Board of Trustees*, 35 F.3d 265, 268 (7th Cir. 1994); *Cohen v. Brown Univ.*, 991 F.2d 888 (1st Cir. 1993); *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 879 (5th Cir. 2000) *Chalenor v. Univ. of North Dakota*, 291 F.3d 1042, 1045 (8th Cir. 2002); *Neal v. Board of Trustees*, 198 F.3d 763, 767 (9th Cir. 1999); *Roberts v. Colorado State Bd. of Agric.*, 998 F.2d 824, 828–829 (10th Cir. 1993).

112. If a defendant is unable to show a substantially proportional relationship between the female student body and opportunities for female athletes, the burden of proof rests on the defendant to show a continuing practice of increasing athletic opportunities for women or that its existing programs fully and effectively accommodate the interests and abilities of the female student body. *Kelley*, 35 F.3d at 270.

**<u>Hanover is Discriminating Against Its Female Athletes</u>**

113. Hanover has discriminated and is discriminating against its female students and varsity student-athletes in violation of Title IX by depriving them of equal opportunities to participate in varsity intercollegiate athletics.

114. Hanover has not complied and cannot comply with any part of the three-part test for equal opportunities to participate. Accordingly, it does not effectively accommodate female student-athletes' interests and abilities.

115. First, Hanover does not provide "intercollegiate level participation opportunities for male and female students in numbers substantially proportionate to their respective enrollments." *See* 44 Fed. Reg. at 71, 418. Since at least 2005, Hanover has deprived women of athletic participation opportunities substantially proportionate to their enrollments.

116. The table below shows Hanover's annual numbers, based on the Equity in Athletics Disclosure Act ("EADA") reports it submitted and verified as accurate to the U.S. Department of Education since 2005-2006 and, for 2025-2026, the best publicly available information, as well as the projected shortfall for 2026–2027 if Hanover is allowed to eliminate the women's swimming team.[3]

[3] Hanover has exclusive access to its Title IX athletic participation data and has not yet disclosed that information to Plaintiffs or the public. For that reason, Plaintiffs rely in this Complaint on public EADA data that Hanover has certified as accurate to the U.S. Department of Education, which courts have held is appropriate. *See*, e.g., *Mansourian v. Board of Regents of Univ. of California*, 602 F.3d 957, 968 (9th Cir. 2010) (finding that "EADA reports contain[ed] ample data demonstrating that [the educational institution] could not satisfy the substantial proportionality option…"); *see also Parker v. Franklin County Cmty. Sch. Corp.*, 667 F.3d 910 (7th Cir. 2012) (relying on statistical and athletic participation data to evaluate disparities and unequal treatment under Title IX). Additionally, because Hanover does not have to submit its 2025-2026 EADA report until December 2026, Plaintiffs used Hanover's 2024–2025 enrollment data as a proxy and publicly available athletic roster information for the 2025–2026 academic year. *See* https://athletics.hanover.edu/. All of this data was analyzed and this table was created by nationally-recognized Title IX expert Dr. Donna Lopiano, (https://sportsmanagementresources.com/our-consultants/donna-lopiano), who is filing a declaration and expert report in support of Plaintiffs' Motion for Preliminary Injunction preserving the women's teams at Hanover while this case proceeds.

| EADA Survey Year[1] | Male Undergraduates | Female Undergraduates | Total Undergraduates | Percent Male Under Grads | Percent Female Under Grads | Total Male Athletes | Total Female Athletes | Total Athletes | Percent Male Athletes | Percent Female Athletes | Percent Female Athlete Shortfall[3] | Female Athlete Participation Gap[4] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2005-06 | 438 | 566 | 1004 | 43.6% | 56.4% | 185 | 110 | 295 | 62.7% | 37.3% | 19.1% | 129 |
| 2006-07 | 449 | 520 | 969 | 46.3% | 53.7% | 196 | 106 | 302 | 64.9% | 35.1% | 18.6% | 121 |
| 2007-08 | 424 | 488 | 912 | 46.5% | 53.5% | 193 | 107 | 300 | 64.3% | 35.7% | 17.8% | 115 |
| 2008-09 | 416 | 503 | 919 | 45.3% | 54.7% | 227 | 127 | 354 | 64.1% | 35.9% | 18.9% | 147 |
| 2009-10 | 422 | 506 | 928 | 45.5% | 54.5% | 219 | 133 | 352 | 62.2% | 37.8% | 16.7% | 130 |
| 2010-11 | 440 | 564 | 1004 | 43.8% | 56.2% | 240 | 141 | 381 | 63.0% | 37.0% | 19.2% | 167 |
| 2011-12 | 478 | 582 | 1060 | 45.1% | 54.9% | 258 | 152 | 410 | 62.9% | 37.1% | 17.8% | 162 |
| 2012-13 | 492 | 624 | 1116 | 44.1% | 55.9% | 277 | 204 | 481 | 57.6% | 42.4% | 13.5% | 147 |
| 2013-14 | 495 | 661 | 1156 | 42.8% | 57.2% | 273 | 163 | 436 | 62.6% | 37.4% | 19.8% | 202 |
| 2014-15 | 471 | 656 | 1127 | 41.8% | 58.2% | 273 | 186 | 459 | 59.5% | 40.5% | 17.7% | 194 |
| 2015-16 | 465 | 660 | 1125 | 41.3% | 58.7% | 265 | 167 | 432 | 61.3% | 38.7% | 20.0% | 209 |
| 2016-17 | 462 | 618 | 1080 | 42.8% | 57.2% | 276 | 199 | 475 | 58.1% | 41.9% | 15.3% | 170 |
| 2017-18 | 497 | 582 | 1079 | 46.1% | 53.9% | 311 | 191 | 502 | 62.0% | 38.0% | 15.9% | 173 |
| 2018-19 | 491 | 603 | 1094 | 44.9% | 55.1% | 306 | 243 | 549 | 55.7% | 44.3% | 10.9% | 133 |
| 2019-20 | 473 | 589 | 1062 | 44.5% | 55.5% | 318 | 207 | 525 | 60.6% | 39.4% | 16.0% | 189 |
| 2020-21 | 470 | 547 | 1017 | 46.2% | 53.8% | 287 | 198 | 485 | 59.2% | 40.8% | 13.0% | 136 |
| 2021-22 | 485 | 510 | 995 | 48.7% | 51.3% | 334 | 188 | 522 | 64.0% | 36.0% | 15.2% | 163 |
| 2022-23 | 471 | 474 | 945 | 49.8% | 50.2% | 312 | 190 | 502 | 62.2% | 37.8% | 12.3% | 124 |
| 2023-24 | 472 | 480 | 952 | 49.6% | 50.4% | 333 | 194 | 527 | 63.2% | 36.8% | 13.6% | 145 |
| 2024-25 | 507 | 514 | 1021 | 49.7% | 50.3% | 355 | 190 | 545 | 65.1% | 34.9% | 15.5% | 170 |
| Proj. 2025-26[2] | 507 | 514 | 1021 | 49.7% | 50.3% | 339 | 166 | 505 | 67.1% | 32.9% | 17.5% | 177 |

[1] All data 2005-06 through 2024-25 retrieved from U.S. Department of Education Equity in Athletics Disclosure (EADA) data base: https://ope.ed.gov/athletics/#/

[2] Projected 2025-26 data used 2024-25 male and female undergraduate enrollment as a proxy for estimating the fall, 2025 IPEDS common data set report of full-time undergraduate enrollment which has not been produced as of the date of this report. Athlete participant counts are based on athlete 2025-26 rosters listed on the HC athletic website (https://athletics.hanover.edu/) because HC has not produced 2025-26 actual partipation counts as of the date of this report. I note but cannot explain the significant difference in website total athlete counts in 2025-26 compared to EADA-reported participant counts in 2024-25, a larger than normal year-to-year fluctuation, primarily created by an unusual decline of 20 men and 20 women in 2025-26 website counts compared to 2024-25 EADA 'all track combined' reported participation (see Exhibit D which shows EADA and website counts by sport). If 2025-26 participation was estimated based on both 2024-25 undergraduate enrollment AND athletic participation, it would look exactly like the 2024-25 row with a female participation gap of 170.

[3] Difference between the percent female undergraduate enrollment and the actual percent female athlete participants expressed as a percent.

[4] Result of formula: (Total Male Athletes divided by Percent Male Undergrads) minus (Total Athletes). The initial calculation provides the total number of athletes that should have existed if male athletes represented their percentage in the undergraduate student . The second calculation subtracts the actual number of male and female athletes provided from the result of the first calculation. The final result is the number of female athletic opportunities that should be added to provide female athletes opportunities equal to their percentage in the undergraduate student body--the "female participation gap". The formulaic calculation is calculated to the nearest one-tenth of a percent and rounded to the nearest whole number because partial human bodies cannot be added.

117. Hanover's own numbers show that, in 2024-2025, it needed to add 170 opportunities for women to achieve proportionality. Based on the best publicly available numbers, in 2025-2026, it would have needed to add 177 opportunities to achieve proportionality. And, if it cuts the women's (and men's) swimming team, it will need to add 180 women's opportunities to achieve proportionality in 2026-2027.

118. Similarly, Hanover does not meet the second part of the three-part test. It cannot show a history and continuing practice of program expansion that is demonstrably responsive to the developing interest and abilities of the female students.

119. The elimination of the women's swimming team, without more, precludes Hanover from satisfying part two of the three-part test. Hanover cannot demonstrate a history and continuing practice of expanding opportunities for women because it is decreasing opportunities for women by cutting an established team.

120. Regarding efforts to remedy its problem of disproportionate opportunities for women, Hanover attempted to start a stunt team in the 2019-2020 academic year, which would have provided athletic opportunities for women. However, this team never launched and the school did not renew its efforts to add opportunities.

121. Hanover has said it believes the HCAC will begin conference play for women's flag football in Spring 2028, there will be sufficient interest for it to participate, and resources that were being expended for swimming will be shifted to this program. However, the possibility of a new team in two years does not erase the current lack of opportunities for women at Hanover.

122. Finally, Hanover cannot satisfy the third part of the three-part test. It is not fully and effectively accommodating the female students' athletic interests and abilities because, among other things, it is eliminating the women's swimming team.

123. The U.S. Department of Education's 1996 Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test states: "If an institution has recently eliminated a viable team from the intercollegiate program, OCR will find that there is sufficient interest, ability, and

available competition to sustain an intercollegiate team in that sport unless an institution can provide strong evidence that interest, ability, or available competition no longer exists."[4]

124. Hanover cannot provide any such strong evidence. The women's swimming team thrived after it was established with a full-time head coach who was given sufficient support and time to recruit and develop a team. After that coach resigned in the middle of the season, Hanover did not replace him or hire any similarly experienced full-time head coach. Instead, after significant time lapsed, it hired Coach Crawford as a part-time "interim" head coach and then, without conducting any search, made him the official head coach and kept him part-time.

125. Despite extraordinary facilities challenges with the Southwestern pool repeatedly closed and substitute pools far away, along with very early and late practice times, and no home competitions, Coach Crawford, working part-time and with no assistant coach, held the team together. And after the facility problems were resolved, he recruited many more athletes and significantly increased the size of the women's team.

126. For the past eight years, the women's swimming team has shown sufficient interest and ability by successfully competing against five other women's teams in the HCAC, placing between fourth and seventh place at the conference championship meets during that period.

127. Instead of fostering that interest and ability, Hanover refused to provide the women's swimming team with resources comparable to those it provided to its other varsity teams, including a full-time head coach, an assistant coach, and/or a graduate assistant, or resources comparable to those provided by other schools in its conference to their women's swimming teams.

---

[4] *See Clarification of Intercollegiate Athletics Policy Guidance: The Three-Part Test* issued by U.S. Department of Education's Office for Civil Rights (OCR) on January 16, 1996 (https://www.ed.gov/laws-and-policy/higher-education-laws-and-policy/higher-education-policy/clarification-of-intercollegiate-athletics-policy-guidance-the-three-part-test). Site last visited August 12, 2026.

128. Hanover never hired Coach Crawford full-time, looked to hire anyone else, or even hired an assistant coach or graduate assistant for the team. And, just as the facility problems were resolved, Hanover eliminated the team.

129. There is more than sufficient interest, ability, and competition available to sustain an intercollegiate women's swimming team at Hanover College. The school has just refused to foster or fulfill it.

130. Hanover's intercollegiate athletic program also is not fully and effectively accommodating women's interests and abilities because it is not offering women opportunities to participate in other viable varsity teams for which interest, ability, and competition are available.

131. Within Hanover's competition region, there is interest, ability, and Division III competition available for other viable women's teams, including in acro-tumbling, field hockey, equestrian, rowing, stunt, and wrestling.

132. Flag football could also be viable at Hanover, as the school has already recognized. Flag football has recently been approved by the NCAA as a championship sport, and grants are available from third parties other than the NCAA to assist institutions in establishing new teams.

133. Hanover, however, has not taken advantage of any of these opportunities and, despite its three-figure female participation gap, is not planning to add any women's teams during the 2026–2027 academic year.

134. Hanover also has not taken the steps it should have to determine whether there are viable teams it should be developing or adding to fully and effectively accommodate female athletes' interests and abilities.

135. The 1996 Clarification states that, to determine whether a school is fully and effectively accommodating the interests and abilities of the underrepresented sex (women at Hanover), OCR will examine whether:

a. viable teams have been previously eliminated from the program;
b. any requests have been made by students and admitted students that a particular sport be added;
c. any requests have been made for the elevation of an existing club sport to intercollegiate status;
d. participation in club or intramural sports has been reviewed;
e. interviews with students, admitted students, coaches, administrators and others regarding interest in particular sports have been conducted and reviewed;
f. surveys or questionnaires of students and admitted students regarding interests in particular sports have been conducted and results reviewed (noting that the failure of a student to respond to a survey cannot be considered an expression of lack of interest);
g. previous interscholastic sports and current club and intramural sports in which admitted underrepresented students have participated have been examined;
h. the participation rates in sports in high schools, amateur athletic associations, and community sports leagues that operate in areas from which the institution draws or recruits its students have been examined;
i. the institution demonstrates that it has a policy/process in place to elevate club sports and respond to expressions of student interest in varsity opportunities;
j. competitive opportunities in sports offered by other schools against which the institution competes exist;
k. competitive opportunities in sports offered by other schools in the institution's geographic area, including those offered by schools against which the institution does not now compete;
l. the institution has actively encouraged the addition of new women’s sports and/or the development of better competition opportunities in club sports by the member institutions in its conference (by asking that they add the same sport for women) or to help develop a sport-specific conference;

m. if the institution recruits potential athletes for its men's teams, the institution has examined whether additional women's teams could be similarly recruited and competition available for that team within the same geographical area in which its existing men's and women's teams compete;

n. opinions of coaches, administrators, and athletes at the institution have been solicited regarding whether interested student and admitted students have the potential to sustain an intercollegiate team;

o. participation of students in other sports (interscholastic, intercollegiate, open amateur) has been examined to determine whether they have demonstrated skills or abilities that are fundamental to other sports being considered;

p. tryouts or other direct observations of participation in the particular sport in which there is an interest have been conducted;

q. assessments of student interest and ability are conducted at least every two years recognizing that at a typical two-year institution, the student body changes each year substantially; and

r. the institution has effective ongoing procedures for receiving and responding to requests for additional teams which are widely disseminated to existing and newly admitted students as well as coaches and other employees.

136. So, Hanover has not complied and is not complying with any part of the three-part test for providing women with equal opportunities to participate in varsity athletics.

**INJUNCTIVE RELIEF**

137. Plaintiffs seek and are entitled to preliminary and permanent injunctive relief that requires Hanover to (a) preserve the women's swimming team—and all other women's teams—until Hanover provides women with the equal opportunities to participate in varsity intercollegiate athletics and (b) develop and implement a plan that ensures Hanover is and will be providing women with those opportunities as quickly as possible.

138. If Hanover is not enjoined from cancelling the women's swimming team, Hanover's sizeable Title IX violations will continue and worsen, with more women being deprived of equal opportunities to participate in varsity sports, and Hanover's compliance with Title IX being delayed even further down the road.

139. Additionally, if Hanover is not enjoined from cancelling the women's swimming team, it will cause irreparable harm to Plaintiffs, their teammates, and the proposed Class Members by allowing Hanover's discrimination against them to persist and Hanover to continue denying them an equal opportunity to participate in varsity intercollegiate athletics.

140. If Hanover is not restrained from eliminating the women's swimming team, Plaintiffs and members of the team will be deprived of their once-in-a-lifetime opportunity to participate in varsity intercollegiate athletics at Hanover—one that provides academic, physical, psychological, social, and economic benefits. For those who are seniors, it likely spells the end of their athletic careers.

141. There is no adequate after-the-fact remedy at law for these harms.

142. If the Court acts quickly, the athletes on the women's varsity swimming team would be able to prepare for and participate in competition during the 2026-2027 season. Many student-athletes will have their rights and their team preserved.

143. As more time passes, if the women's swimming team is not preserved, it will become increasingly difficult, if not impossible, for the team and athletes to train and prepare adequately for the next season.

144. The continuing, irreparable harm caused by Hanover's discriminatory actions far outweighs any possible harm that granting the injunctive relief might cause Hanover.

145. Preliminarily enjoining Hanover from eliminating the women's varsity swimming team, and all other women's teams, will ensure continuation of the status quo ante during this litigation, when these athletes have few opportunities, if any, to pursue their interests and abilities elsewhere.

146. Hanover will suffer no harm by continuing the women's swimming team, other than the monetary cost of the team Hanover has already borne for approximately eight years.

147. The permanent harm caused to Plaintiffs by Hanover's discrimination is irreparable and cannot be adequately compensated with money. This harm far outweighs any monetary cost incurred by Hanover to continue the women's swimming team or to add athletic opportunities for women.

148. Importantly, Hanover could choose to allocate its budget and athletic opportunities more equitably merely by shifting its longstanding favoritism toward men to a more equal allocation between men and women.

149. Meanwhile, Hanover will gain public relations and enrollment advantages by complying with Title IX and by offering more opportunities for its female students.

150. The injunctive relief Plaintiffs request will promote the public interest by increasing educational opportunities for female students, decreasing sex discrimination against female student-athletes and potential student-athletes in Hanover's intercollegiate athletic program, and requiring Hanover to comply with federal law.

151. Congress decided that ending such discrimination is in the public interest when it enacted Title IX. It has reaffirmed that public interest over the past 54 years by defeating every attempt to weaken the athletic equality requirements of Title IX. Equal opportunity for all students,

male and female, is at the core of this case, is at the core of American values, and is clearly in the public interest.

152. Underlining and reinforcing that established public interest, the President of the United States issued an Executive Order entitled "Saving College Sports" on July 24, 2025, that emphasizes the need "to protect non-revenue sports, including many women's sports, that comprise the backbone of intercollegiate athletics, drive American superiority at the Olympics and other international competitions, and catalyze hundreds of thousands of student-athletes to fuel American success in myriad ways." Exec. Order No. 14322, 90 FR 35821 (July 24, 2025). Section 2 (a) of the Executive Order specifically provides, "It is the policy of the executive branch that opportunities for scholarships and collegiate athletic competition in women's and non-revenue sports must be preserved and, where possible, expanded…" *Id.*

153. Hanover's elimination of the women's swimming team violates these policies and Title IX.

## CLASS ALLEGATIONS

154. Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) on behalf of the following proposed class: All present and future female students at Hanover College.

155. Each of the named Plaintiffs is a member of the proposed class and has been injured by Hanover's sex discrimination in its varsity intercollegiate athletic program. The announced intention to eliminate Hanover's women's varsity swimming team will exacerbate the discrimination by eliminating female athletic participation opportunities at Hanover.

156. Because Title IX requires a program-wide comparison of the sex-segregated men's and women's athletic programs, the Title IX issues in this action are inherently class-based.

157. **Numerosity.** The proposed class is so numerous that joinder is impracticable. The requirements of Rule 23(a)(1) are satisfied because there are too many Class Members for joinder of all of them to be practicable. Upon information and belief, the total number of Class Members is at least 500 in number.

158. The proposed class also meets the numerosity requirements because joinder of all class members and all persons harmed by Hanover's ongoing sex discrimination in its varsity intercollegiate athletic program is not just impracticable, but impossible.

159. The proposed class is known to exist, but the members of the class will change during this litigation because of the nature of college enrollment and athletic participation. Students at Hanover generally aim to graduate four years after they matriculate. Division III athletes are often eligible to participate in their sport for only four years. Accordingly, the members of the class harmed by Hanover's discrimination will change as each outgoing class of students graduates and another incoming class of students enrolls at Hanover.

160. Not all members of the Plaintiff Class are currently identifiable because the class includes future students who will enroll at Hanover during this litigation.

161. Not all members of the Plaintiff Class are currently identifiable because the class includes not only women's swimmers, but also all present and future female students who want to participate in other varsity intercollegiate sports that are not offered at Hanover.

162. Moreover, because Hanover recruits high school students and transfer students from around the world, Hanover could increase athletic participation opportunities for female students by starting virtually any new women's varsity sports team and then recruiting women to enroll and participate.

163. It is unknown how many present or future female student-athletes would enroll at Hanover or would participate in athletics at the university if it stopped discriminating against women. The hundreds of additional student-athletes who might be recruited, apply, or participate in Hanover's varsity intercollegiate athletic program if Hanover added the necessary athletic opportunities are too numerous to make joinder practicable.

164. Joinder is also impracticable because the class includes members whose identities are not currently known. There are present female students at Hanover who cannot currently be identified by Plaintiffs, but who would participate in varsity athletics at Hanover if it did not intentionally discriminate in the operation of its athletic program or if it offered the sports or events in which female students want to participate.

165. Joinder is impracticable because the class includes unknown and unidentifiable future students who will enroll at Hanover during this litigation.

166. **Commonality.** The claims of Plaintiffs and Class Members raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2). These common legal and factual questions may be resolved without the necessity of resolving individualized factual disputes concerning individual Class Members, as liability and the appropriate remedies turn on Hanover's conduct towards all Plaintiffs and Class Members. Plaintiffs' claims are typical of the class; and Plaintiffs will fairly and adequately protect the interests of the Class.

167. **Typicality.** The claims of the named Plaintiffs are typical of the claims of the unnamed Class Members they seek to represent because, among other things, all such claims arise out of the same misconduct by Hanover as alleged herein. Plaintiffs' claims are typical of the claims of the putative Class because Plaintiffs and all Class Members were and are being discriminated

against in violation of Title IX by Hanover denying women equal opportunities to participate in varsity intercollegiate athletics.

168. Plaintiffs satisfy the typicality requirement of Federal Rule of Civil Procedure 23(a)(3) because their claims are typical of those of the proposed class. They have all been denied, are continuing to be denied, or will be denied equal opportunities to participate in varsity intercollegiate athletics because of Hanover's ongoing sex discrimination.

169. Plaintiffs are requesting this Court prohibit Hanover from eliminating women's varsity intercollegiate athletic opportunities and require Hanover to preserve the women's swimming team until it is and will be in compliance with Title IX.

170. Plaintiffs will fairly and adequately protect the interests of all Class Members because they are committed to prosecuting the claims alleged herein and to obtain injunctive relief requiring Hanover to comply with Title IX. Plaintiffs have no interests that are in conflict with, or antagonistic to, the interests of Class Members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the Class Members.

171. The proposed class satisfies Federal Rule of Civil Procedure 23(b)(2) because Hanover has acted or refused to act on grounds generally applicable to the class, so that final injunctive or corresponding declaratory relief is appropriate with respect to the class as a whole.

172. Undersigned counsel have devoted substantial time to identifying and investigating the potential claims in this action, have developed detailed knowledge of the facts and the applicable law, and have sufficient resources to commit to representing this putative class as interim counsel under Federal Rule of Civil Procedure 23(g)(3) until such time as this Court determines whether to certify the action as a class action.

173. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class Members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiffs and their undersigned counsel are aware of their fiduciary responsibilities to the Class Members and are determined to fulfilling those responsibilities for the Class Members.

174. There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by Class Members will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, an important public interest will be served by addressing the matter as a class action.

175. Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I

**Violation of Title IX: Denial of Equal Athletic Participation Opportunities**

176. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

177. Plaintiffs bring this claim on behalf of themselves and those similarly situated as a class action as set forth in the Class Allegations.

178. Hanover is subject to Title IX because it receives federal financial assistance and operates education programs and activities, including intercollegiate athletics.

179. Hanover determines the number of athletic participation opportunities that it will provide to male and female students by choosing which sports it will offer to each sex and deciding how many athletes it will allow to participate on each team.

180. Hanover fails to provide female students with an equal opportunity to participate in varsity intercollegiate athletics in violation of Title IX and 34 C.F.R § 106.41(c)(1).

181. Hanover fails to comply with each part of the three-part test, described above, to demonstrate compliance with the requirements of Title IX.

182. Hanover does not provide female students with varsity intercollegiate athletic participation opportunities in numbers substantially proportionate to female undergraduate enrollment.

183. Hanover has announced its decision to eliminate a women's swimming team for female student-athletes with the interest and ability to participate in varsity swimming at Hanover.

184. Hanover cannot show a history or continuing progress of program expansion for women. Instead, by deciding to eliminate the women's swimming team, Hanover is contracting the opportunities it provides for women to participate in varsity athletics.

185. Hanover is not fully and effectively accommodating women's interests and abilities in its varsity intercollegiate athletic program.

186. Plaintiffs and other female student-athletes and Class Members have the interest and ability to participate in women's varsity swimming at Hanover.

187. High school and college transfer students (the source of Hanover's incoming, prospective, and future students) also have the interest and ability to participate in women's varsity swimming at Hanover.

188. Competition exists in women's swimming because it is an NCAA sport in Hanover's athetic conference, other competition exists in Hanover's normal competitive area, and Hanover has offered the sport for many years—as have other local, state, and regional schools.

189. Hanover has discriminated against Plaintiffs and other female students on the basis of sex by failing to provide women with athletic participation opportunities substantially proportionate to their enrollment.

190. Hanover will continue and exacerbate its existing pattern and practice of sex discrimination in the allocation of athletic participation opportunities if it is not restrained from eliminating female athletic participation opportunities, including in women's swimming.

191. Plaintiffs seek a declaration that Hanover engaged in discrimination on the basis of sex by failing to offer female students equal opportunities to participate in intercollegiate athletics at Hanover.

192. Plaintiffs seek expedited preliminary and permanent injunctive relief requiring Hanover to stop discriminating in the operation of its intercollegiate athletics program and to continue the women's swimming team at Hanover in the 2026–2027 academic year and beyond.

193. As a result of Hanover's discriminatory actions, Plaintiffs and the proposed class members have been denied their civil right to receive equal opportunities to participate in varsity intercollegiate athletics free of sex discrimination.

194. Plaintiffs and the proposed Class Members have also been denied the educational, economic, physical, psychological, and social benefits of athletic participation. They have also been and are being treated as second-class citizens, which has stigmatizing effects.

195. Hanover's conduct has caused and will continue to cause Plaintiffs irreparable harm unless enjoined by this Court.

196. If Hanover is not restrained from eliminating the women's swimming team, these athletes will forever lose the opportunity to participate in intercollegiate sports at Hanover—an opportunity that can last for a limited time, but provides a lifetime of educational, economic, physical, psychological, and social benefits.

197. As such, Plaintiffs and all Class Members are entitled to the relief requested herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant as follows:

1. Certify this case as a class action on behalf of all present and future female students at Hanover College; appoint Plaintiffs as class representatives; and appoint Plaintiffs' counsel as class counsel;
2. Declare that Defendant's athletic program violates Title IX by failing to provide equal athletic participation opportunities to women;
3. Enter an order declaring that Hanover has engaged in a past and continuing pattern and practice of discrimination against female students on the basis of sex in the operation of its varsity intercollegiate athletics program, in violation of Title IX and the regulations promulgated thereunder;
4. Preliminarily and permanently enjoin Hanover from continuing to discriminate on the basis of sex in its athletics program and prohibiting Hanover from eliminating the women's varsity swimming team—or any other women's varsity teams—unless and until Hanover is and will be in compliance with Title IX;
5. Maintain jurisdiction over this action to monitor Hanover's compliance with this Court's orders;

6. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable law; and

7. Award such other and further relief as the Court deems just and proper.

Dated: August 25, 2026

Respectfully submitted,

*s/ Mark W. Sniderman*

Mark W. Sniderman
SNIDERMAN LAW
One Indiana Square, Ste. 1550
Indianapolis, IN 46204
(317) 361-4700 Tel
(317) 361-4004 Fax
Email: mark@snidermanlaw.com

Kimberly A. Dougherty, Esq. (Pro Hac Vice Pending)
Catherine Cawley, Esq. (Pro Hac Vice Pending)
JUSTICE LAW COLLABORATIVE, LLC
210 Washington Street
North Easton, MA 02356
Tel. 508-230-2700
Fax 385-278-0287
Email: kim@justicelc.com
Email: catherine@justicelc.com

Arthur H. Bryant (Pro Hac Vice Pending)
ARTHUR BRYANT LAW, P.C.
1999 Harrison Street, 18th Floor
Oakland, CA 94612
Phone: (510)-391-5454
Fax: N/A
Email: arthur@arthurbryantlaw.com

Elizabeth Harmon
NEVIUS LEGAL
Palm Tower
1343 Main Street, Suite 705
Sarasota, FL 34236
Phone: (317) 662-0398
Fax: N/A
Email: libby@neviuslegal.com

Timothy Nevius (Pro Hac Vice Pending)
NEVIUS LEGAL
Palm Tower
1343 Main Street, Suite 705
Sarasota, FL 34236
Phone: (212) 767-9229
Fax: N/A
Email: tim@neviuslegal.com

ATTORNEYS FOR PLAINTIFFS AND CLASS MEMBERS

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing document has been filed electronically using the Court's electronic filing system and has also been served upon the following counsel by electronic mail, pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure, on this 25th day of August 2026.

Bryan H. Beauman
Carmine G. Iaccarino
Sturgill, Turner, Barker & Moloney, PLLC
333 West Vine Street, Suite 1500
Lexington, KY 40507
BBeauman@sturgillturner.com
Carmine@sturgillturner.com

Nathaniel M. Uhl
Ice Miller LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
Nate.Uhl@icemiller.com

*Attorneys for Defendant Hanover College*

*s/ Mark W. Sniderman*
Mark W. Sniderman

SNIDERMAN LAW
One Indiana Square, Ste. 1550
Indianapolis, IN 46204